**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

LAKEISHA MICHELE SHOOTS,    )
   )
     Plaintiff,    )
   )
vs.    )    CA 19-0589-JB-MU
   )
ANDREW M. SAUL,    )
Commissioner of Social Security,    )
   )
     Defendant.    )

## REPORT AND RECOMMENDATION

Plaintiff Lakeisha Michele Shoots, proceeding *pro se,* brings this action pursuant to 42 U.S.C. §§ 405(g) and seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). This action has been referred to the undersigned Magistrate Judge for a Report and Recommendation. (*See* Docket Sheet). Upon consideration of the administrative record, Shoots' briefs, the Commissioner's brief, and the arguments made at the hearing on this matter, it is recommended that the Commissioner's decision denying benefits be reversed and remanded under sentence four of § 405(g).

## I. PROCEDURAL HISTORY

Shoots applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on July 14, 2016, alleging disability beginning on June 24, 2016. (Tr. 383-84). Her application was denied at the initial level of administrative review on October 14, 2016. (Tr. 302-16). On November 1, 2016, Shoots requested a hearing by an Administrative Law Judge (ALJ). (Tr. 323-24). After a hearing was held on January

29, 2018, the ALJ issued an unfavorable decision finding that Shoots was not under a disability from the alleged onset date, June 22, 2016, through the date of the decision, June 18, 2018. (Tr. 46-59). Shoots appealed the ALJ's decision to the Appeals Council, and, on June 30, 2019, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

After exhausting her administrative remedies, Shoots sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on January 23, 2020. (Docs. 14, 15). Both parties filed briefs setting forth their respective positions. (Docs. 16, 18, 20). The Court heard oral argument on August 5, 2020. (Doc. 24).

## II.  CLAIMS ON APPEAL

Shoots alleges that the ALJ's decision to deny her benefits is in error for the following reasons: 1) the ALJ did not fully develop the record; 2) the ALJ erred by not making findings regarding her medication side effects; 3) the ALJ erred in making her credibility determinations; 4) the ALJ erred in finding that she had no severe mental impairments and by not including any limitations on concentration, persistence, and pace in her RFC; 5) the ALJ erred in according weight to her treating physician's statements and, thereby erred in the determination of her residual functional capacity ("RFC"); 6) the ALJ erred in concluding that she could perform her past relevant work; and 7) the ALJ erred by not asking the Vocational Expert questions pertaining to her transferable skills. (Doc. 16 at p. 2).

### III. BACKGROUND FACTS

Shoots was born on November 25, 1972 and was 43 years old at the time she filed her claim for benefits. (Tr. 281). Shoots initially alleged disability due to neck and shoulder spasm and pain, constant headaches, memory lapses, anxiety attacks, depression, inability to sit for a long period of time, and insomnia. (Tr. 426). At the hearing, Shoots testified that she cannot work due to neck pain, headaches, and dizziness and drowsiness caused by medications. (Tr. 284-90). Shoots graduated from high school and completed some college. (Tr. 282, 427). At the time she filed her application, she was not working but had worked as a dispatcher for the Mobile police department from 1996 to 2016. (Tr. 282-83).

At the time of the hearing, Shoots lived with her husband and one of her children. (Tr. 282). At the hearing, she testified that her daily activities include getting her son up for school, driving him to school, coming home and sitting for a minute, trying to get her housework together, and napping. (Tr. 293). She testified that she doesn't have a problem taking care of her personal hygiene. (Tr. 294). In the Function Report she completed, Shoots stated that she cooks complete meals, makes the bed, washes dishes, and does a little ironing on a daily basis. (Tr. 441). Shoots has a driver's license and is able to drive. (Tr. 282, 442). She can pay bills, count change, handle a savings account, and use a checkbook/money orders. (Tr. 442). She watches television and spends time with others on the phone or in person on a daily basis. (Tr. 443). She has never lost a job because of problems getting along with people, she generally gets along with authority figures, she can follow instructions but sometimes has to have oral instructions repeated, and she handles changes in routine fine. (Tr. 444-45).

# IV. ALJ'S DECISION

After conducting a hearing, the ALJ made a determination that Shoots had not been under a disability during the relevant time period, and thus, was not entitled to benefits. (Tr. 59). The ALJ found that Shoots met the insured status requirements through December 31, 2020. (Tr. 51). At step one of the five-step sequential evaluation, the ALJ found that Shoots had not engaged in substantial gainful activity ("SGA") since June 22, 2016, the alleged onset date. (Tr. 51). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that Shoots had severe impairments of cervical disc disease status post fusion, headaches, history of anemia, and obesity, but that considering all of her impairments individually and in combination, Shoots did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 52-54). After considering the entire record, the ALJ concluded that Shoots had the RFC to perform a full range of light work as defined in 20 CFR 404.1567(b). (Tr. 54-56). After setting forth her RFC, the ALJ determined that Shoots is capable of performing past relevant work as a dispatcher. (Tr. 58). In the alternative, the ALJ found that the applicable Medical-Vocational Rules support a finding that she is not disabled. (Tr. 58). The ALJ made a third alternative finding that, considering Shoot's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that she can perform. (Tr. 58-59). Accordingly, the ALJ concluded that Shoots was not disabled within the meaning of the Act. (Tr. 59).

# V. DISCUSSION

Eligibility for DIB and a period of disability requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is

disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As set forth above, Shoots has asserted numerous grounds in support of her argument that the Commissioner's decision to deny her benefits is in error. However, based on the finding, as set forth below, that the ALJ erred in determining Shoot's RFC by failing to take into consideration all of her limitations, the Court pretermits its discussion of the remaining issues. *See Jenkins v. Colvin*, CA 2:12-00465-N, 2013 WL 3465190, at *2 (S.D. Ala. July 10, 2013).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added).  The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). In addition to the medical evidence, the ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)).

Shoots argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not give adequate weight to her testimony concerning her limitations or to the opinion of her treating physician, Dr. Brutkiewicz. She specifically pointed out that the ALJ failed to document that she has problems with lifting, which Shoots testified to in her function report and at the hearing before the ALJ. (Doc. 16 at p. 18). The ALJ's decision reveals that the ALJ in this case did review the medical evidence, as well as Shoot's written and oral accounts of her daily activities. (Tr. 52-59). She reviewed examination notes from the various doctors, the findings of objective testing, treatment recommendations, and statements made by the physicians concerning limitations and restrictions. After doing so, the ALJ found that Shoots had the RFC to perform a full range of light work as defined in 20 C.F.R. 404.1567(b). Section 404.1567(b) provides as follows:

> (b) Light work. Light work ***involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds***. Even though the weight lifted may be very little, a job is in this category when it ***requires a good deal of walking or standing***, or when it ***involves sitting most of the time*** with some pushing and pulling of arm or leg controls. ***To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*** If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-

cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)). Based on the Court's review of the record and the ALJ's decision, the Court finds that the ALJ did not take into account all of Shoots' alleged limitations in assessing her RFC. The full range of light work involves the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category also "requires a good deal of walking or standing, or …involves sitting most of the time…." In this case, the ALJ did not mention, discuss, or analyze whether Shoots could meet the lifting or carrying requirements of light work, nor did she sufficiently address whether Shoots could meet the walking, standing, or sitting requirements. The ALJ's failure in this regard prevents the Court from determining whether the ALJ's ultimate opinion was supported by substantial evidence.

In her Function Report that she completed on September 2, 2016, Shoots stated that she can prepare meals by taking breaks while cooking, can make beds, wash dishes, and do a little ironing, can drive a car, but is somewhat limited in turning her head due to neck spasms, and can shop for food and household supplies. (Tr. 440-42). She also stated in her Function Report that she cannot lift anything over 10 pounds and cannot stand or sit for long periods of time. (Tr. 444). At the hearing before the ALJ on January 29, 2018, Shoots testified that she was much more limited in her daily activities. She testified that, because of her neck pain and spasms, she can only sit for 15 to 20 minutes before she needs to get up and move around and that she can only stand for about 20 minutes before she has to move around or sit down. (Tr. 291). She also testified that she can probably lift 5 pounds without hurting anything. (Tr. 292).

Her treating physician, Dr. Carl Brutkiewicz, submitted a medical opinion regarding her ability to do physical activities on December 15, 2016, in which he opined that Shoots could sit for at least six hours in an eight-hour day but could only sit continuously for 30 minutes at one time. (Tr. 917). He also opined that she could stand or walk a total of about four hours in an eight-hour day but only 30 minutes continuously. (*Id.*). He opined that she would need a job which permitted shifting positions at will and would need to take 2-minute breaks every 30 minutes. (Tr. 917-18). On her visit that date, Dr. Brutkiewicz noted that she lacked about 20 degrees of rotation in all directions in her neck. (Tr. 970). In her visit on September 13, 2016, Dr. Brutkiewicz noted that Shoots had gained 30 pounds over the previous three years and diagnosed her with obesity. (*Id.*). In her visit on December 27, 2017, Shoots reported to Dr. Brutkiewicz that, "when she is sitting for more than 15 minutes, she has to get up and move around for 5 or 10 minutes and just cannot stay in one position for too long." (Tr. 1010). He noted mild diffuse tenderness posterior paracervical but noted fairly good range of motion. (*Id.*).

The ALJ discounted Shoot's testimony regarding her limitations but did not adequately link this conclusion to record evidence. The ALJ noted that Shoots stated in her Function Report that she could prepare meals, perform limited housework, drive a car, and go shopping in stores. The ALJ concluded that "[t]his degree of functional ability suggests that [Shoots] is not limited to the extent alleged." (Tr. 55). She also based her finding that Shoots was not limited to the extent alleged based on a medical record that preceded the date of her cervical fusion surgery and her filing for benefits and a finding that her medication side effects were not as substantial as she claimed.

(Tr. 55-56). The ALJ never mentioned Shoot's testimony concerning her lifting limitations and, therefore, did not point to any substantial evidence that these limitations were not credible. Nor did she point to any evidence that showed that Shoot's testimony concerning her ability to sit for extended, continuous periods was not credible. Rather, the medical records show that during the relevant time period, Shoots made this complaint consistently to her doctors.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Id*. Having reviewed the ALJ's decision and the transcript, including all medical records, and considered the arguments made by Shoots, the Court finds that the ALJ's conclusion that the RFC "adequately accounts for the claimant's physical impairments" is not supported by substantial evidence based on the totality of the evidence in the record. This Court, mindful of the limits of its review, declines to make a determination as to the effect Shoots' testimony regarding her lifting and sitting/standing limitations, taken into consideration with the totality of the medical records, has on her RFC. Accordingly, for the reasons set forth herein, the Court recommends that this case be remanded so that the Commissioner can specifically consider the entirety of Shoots' testimony and the medical records and can seek additional evidence, as necessary, in formulating her RFC.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff Lakeisha Michele Shoots's claim for benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

      **DONE** this **5th** day of **March, 2021**.

/s/ P. Bradley Murray
**P. BRADLEY MURRAY**
**UNITED STATES MAGISTRATE JUDGE**
